## ·BARD v. CITY OF AUGUSTA.

*(Circuit Court, D. Kansas. 1887.)*

1. RAILROAD COMPANIES—MUNICIPAL AID—POWER TO ISSUE BONDS.
   Section 4 of the Kansas act for the organization of cities of the third class, (Comp. Laws Kan. 187,) which provides that such cities shall remain a part of the corporate limits of the townships in which they are situated, for various purposes, including that of subscribing stock in aid of constructing railroads, does not exclude such cities from the power to issue railroad aid bonds.

2. SAME.
   Under section 63 of the same act, which provides that the council of such cities shall take all needful steps to protect the interests of the city in any railroad leading from or towards the same, cities of the third class are authorized to become interested in railroad enterprises.

3 SAME.
   Laws Kan. 1876, *c.* 107, as amended in 1877, (Comp. Laws, 792,) relating to aid in the construction of railroads, expressly authorizes *any city*, upon certain conditions, to issue bonds for railroad purposes.

At Law.   On demurrer to complaint.

*John O'Day*, for plaintiff. ·

*S. O. Thacher*, for defendant.

BREWER, J.   This action is on railroad aid bonds, and the question presented by the demurrer to the second count of the answer is as to the power of the defendant city to issue such bonds; for, if the power existed, the recitals in the bonds cut off other defenses.   The defendant is a city of the third class.   The act for the organization of such cities was passed in 1871.   Section 4 reads as follows:

"Municipal corporations regulated and governed by this act shall be and remain a part of the corporate limits of the municipal townships in which the same are situated, for all township purposes of electing justices of the peace, constables, for the purpose of building bridges, and subscribing stock in aid of constructing railroads.   All elections for justices of the peace and constables, and for issuing township bonds for building bridges and railroads, shall be held at such place as shall be prescribed for holding the township elections."   Comp. Laws, 187.

This section was amended in 1876 by the addition of two provisos, and, as amended, took effect February 29, 1876.   Nothing need be said as to these provisos, for it is conceded that defendant did not come within their scope.

Now, the contention of defendant is that, under this section, the sole power of issuing railroad bonds was in the township, and therefore that its issue of such bonds was without warrant of law.   This is a misconception of the import of the section.   It does not attempt to limit or qualify any of the powers given by other portions of the act to the city. It simply provides that the mere organization of the municipality into a city of the third class shall not withdraw it from the territorial limits of the township, but it shall remain a part thereof for certain township purposes.

A consideration of other legislation will make this clear. The boundaries of counties are prescribed by statute. All cities within the boundaries of a county remain parts of it for all county purposes. County taxes are charged upon their property. County officers exercise all their functions within their territory. Still the powers·of the cities are not affected by this territorial and corporate inclusion within the county. Townships, on the other hand, are created, and their boundaries prescribed and changed, by the board of county commissioners. Comp. Laws, p. 275, § 16. They are complete municipal corporations, the same as counties, and with like power of corporate action. Comp. Laws, c. 110. By section 48 of that chapter, (Comp. Laws, 985,) no city of the first or second class is included within the corporate limits of any township, but constitutes itself an independent township. So, whenever a city grows in population so as to become a city of either of these classes, it thereby separates itself from the township within which it was theretofore included, and such township officers as reside outside the city limits cease to have any territorial jurisdiction within such limits. *Borton* v. *Buck*, 8 Kan. 302. These provisions make plain the import of the section quoted, and show that its scope is simply the retention of a city of the third class within the territorial limits of the township, for certain township purposes. The powers of the city, as a city, are not affected thereby.

Now, turning to the other sections of the act for the organization of cities of the third class, we find that they are endowed with the ordinary powers of a city, and, in addition, section 63 provides that "the council shall take all needful steps to protect the interests of the city, present or prospective, in any railroad leading from or towards the same; but they shall not take or subscribe any stock in any railroad unless at least two-thirds of the electors of such city voting at a legal election vote in favor thereof." This authorizes the city to become interested in railroad enterprises, but prevents any investment therein, except upon the assent of two-thirds of the electors. It would be difficult, with this legislation alone, to deny the power of the defendant to issue these bonds. But beyond this, and to remove any doubt, is express authority found in chapter 107 of the Laws of 1876, as amended in 1877, (Comp. Laws, 792.) This, which is the latest expression of the legislative will, authorizes *any county*, *any township*, and *any city*, upon certain conditions, to issue bonds for railroad purposes. This is the act recited in the bonds sued on, and is clear and unequivocal authority for their issue by defendant.

The demurrer will be sustained.